IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

RICHARD WALKER,

    Plaintiff,

v.                                            Case No: 3:20-cv-773

ALLIANCE OUTDOOR GROUP, INC.
And ALLIANCE OUTDOORS
PRODUCTS, INC., d/b/a X-STAND
TREESTANDS,

    Defendants.

---

### DEFENDANTS ALLIANCE OUTDOOR GROUP, INC. AND ALLIANCE OUTDOORS PRODUCTS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO OSHA AND MACHINERY HANDBOOK PURPORTED "STANDARDS"

NOW COME Defendants, Alliance Outdoor Group, Inc. and Alliance Outdoors Products, Inc. (collectively "Alliance" or "Defendants"), by and through their attorneys, and bring this Motion in *Limine* to Exclude any Reference to Occupational Safety and Health Administration ("OSHA") standards and the Machinery Handbook's purported "standards."

**I.    RELEVANT FACTS**

Plaintiff filed this product liability action as a result of a fall that occurred while Plaintiff was using a 2015 model year Silent Adrenaline Climbing Treestand manufactured and sold by Alliance. Plaintiff alleges his fall was caused by a defectively designed cable strap. Plaintiff's expert, William Dickinson ("Dickinson"), attempts to cite to standards set forth by OSHA regarding wire rope selection and installation criteria. ***Exhibit 1***, *Dickinson Preliminary Report at p. 14*; ***Exhibit 2***, *Dickinson Dep. at 46-49*. Dickinson contends that the cable strap used in the treestand in question was defective because OSHA standards prescribe a design factor of 5 with

respect to wire rope designs. **Exhibit 1**, *Dickinson Preliminary Report at p. 14*. However, OSHA regulations only apply to workplace injuries and do not apply to the manufacture of consumer goods in any capacity. In fact, OSHA regulations never even mention treestands in any way. Therefore, this Court should preclude Plaintiff from referencing OSHA standards at any point throughout the trial due to irrelevance and lack of foundation.

## II. LAW AND ARGUMENT

### A. THE ADMISSIBILITY OF STANDARDS IN PRODUCT LIABILITY CASE IN THE FOURTH CIRCUIT UNDER *SARDIS V. OVERHEAD DOOR CORP.*, 10 F.4TH 268, 281 (4TH CIR. 2021)

The admissibility of standards in the Fourth Circuit relating to product liability cases was recently outlined in *Sardis v. Overhead Door Corp.,* 10 F.4th 268, 281 (4th Cir. 2021). The *Sardis* court directly addressed the attempts to use non-applicable standards and whether such attempts should be excluded at trial. In *Sardis,* the Defendants filed *Daubert* motions challenging the standards relied upon by the Plaintiff's expert in a container case. Those standards were actually industry standards that generally applied to containers, but the Defendants sought to exclude them because they did not apply to the specific product at issue. The trial court allowed the testimony because, as here, the Plaintiff claimed that they did. The *Sardis* court reversed finding that the Court should have looked deeper at the proffered standards and excluded them. In doing so, the Court noted that this is the exact reason why the *Daubert* rules were enacted and that a standard that does not apply to the product at issue **_must_** be excluded at the *Daubert* stage. *Id. at \*12-13 citing Nease*, 848 F.3d at 232–33 (quoting *Daubert*, 509 U.S. at 592, 113 S. Ct. 2786). The Court further ruled that it was incumbent upon the trial Court as a gatekeeper to bar references to such standards if they did not apply to the subject product. *Id.*

### B. THE OSHA REGULATIONS AND THE MACHINERY HANDBOOK ARE INADMISSIBLE BECAUSE THEY ARE NOT STANDARDS AND DO NOT APPLY TO THE SUBJECT PRODUCT

Application of the *Sardis* ruling requires exclusion of the "standards" relied upon by Plaintiff's expert. Specifically, Plaintiff's expert Dickinson claims that he derived his purported safety factor of 5 from standards taken from OSHA and the *Machinery Handbook*.[1] These are not "standards," let alone industry standards, and they do not apply to treestands. Nor do they apply to the cable assembly in the subject product. They should therefore be excluded.

#### 1. Neither OSHA Regulations Nor The *Machinery Handbook* Are Standards

First, neither of these sources are actually standards. Standards are promulgated by a governing body to apply to a specific product or industry. OSHA is a regulation not a standard. Similarly, as a *handbook* (i.e. reference tool) designed to be carried in a toolbox, the *Machinery Handbook* is also not a **_standard_**. An industry standard is a set of criteria within an industry relating to the respective industry, subjected to peer review and comment. Conversely, a "handbook" is a "a concise *reference book* covering a particular subject." "Handbook." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/handbook. Accessed 14 Oct. 2021. It is not a *standard*. Indeed, rather than a peer reviewed standard subjected to comment and consensus, the *Machinery Handbook* is a self-described "reference book" and "tool."

In fact, the *Machinery Handbook* does *not* even claim to be a standard. Nowhere in the *Handbook* itself does it claim to include or set the standards for wire rope. A review of the *Handbook* itself demonstrates that it is merely a **_handbook_** with discussions of wire rope strengths.

---

[1] It must be noted that a safety factor of 5 is critical to Plaintiff's claim because their testing shows an over 4.5 factor of safety in this product. Thus, without referencing another purported standards with an artificially high factor of safety, their testing demonstrates that the product is safe for its intended uses.

It does not set, create or even imply any "standard" at all, let alone an *industry* standard as required by Virginia law. In fact, even in the context of safety factors, it merely provides a range and indicates that factors of safety "usually" are within a certain range. The *Handbook* notes that this depends upon the application and leaves the factor of safety to the industry itself. It states:

> **Safe Working Loads and Factors of Safety.**—The maximum load for which a wire rope is to be used should take into account such associated factors as friction, load caused by bending around each sheave, acceleration and deceleration, and, if a long length of rope is to be used for hoisting, the weight of the rope at its maximum extension. The condition of the rope — whether new or old, worn or corroded — and type of attachments should also be considered.
>
> Factors of safety for standing rope usually range from 3 to 4; for operating rope, from 5 to 12. Where there is the element of hazard to life or property, higher values are used.

By its express terms, the *Machinery Handbook* is not any type of standard at all. Thus, reliance upon it as an "industry standard" is simply wrong.

References to these two sources (which should also be excluded as hearsay) under the auspices of being "industry standards" is exactly the type of testimony that was at issue in *Sardis*. Allowing Dickinson to take the stand and provide testimony with the authority of a proffered expert that these two sources are somehow standards is precisely the type of testimony that the *Sardis* Court stated must be precluded by the Court. Accordingly, such references should be barred at trial.

### 2. The OSHA Regulation Does Not Apply to This Product and Is Inadmissible Under *Sardis*.

Second, the OSHA regulations not only are not "standards" but have been found to not apply to manufacturers by Courts in this Circuit. *Norris v. Excel Indus., Inc.,* 139 F. Supp. 3d 742, 748 (W.D. Va. 2015), aff'd, 654 F. App'x 588 (4th Cir. 2016) (noting that it is fundamental that "OSHA standards apply to employers with respect to their relationship with their employees, not the relationship between a manufacturer and a consumer."); *Davis v. Hebden, Schilbe & Smith, Inc.*, 52 F.3d 320, 1995 WL 231841, at *1 (4th Cir. 1995) ("OSHA regulations are simply "not relevant

to the liability of a manufacturer to an employee of an industrial consumer."). The fact is—OSHA standards do *not* apply.

As explained by the *Norris* Court (affirmed by the Fourth Circuit for the reasons stated by the district court), it is fundamental that "OSHA standards apply to employers with respect to their relationship with their employees, **not the relationship between a manufacturer and a consumer**." *Norris*, 139 F. Supp. 3d at 748 (emphasis added). In *Norris*, the claimant's husband was killed when he was operating a lawnmower as an employee of a lawncare and landscaping business. *Norris*, 139 F.Supp.3d at 742. The plaintiff brought a products liability claim against the manufacturer of the lawnmower alleging negligent design and failure to warn. *Id.* The *Norris* court declined to admit evidence regarding OSHA standards because they are only binding on employers with respect to workplace conditions and not on manufacturers of consumer products. *See id.* at 748 (concluding that OSHA standards "have zero bearing in case[s] where the plaintiff is a consumer and the defendant is a manufacturer."). Indeed, the Court noted that the "purpose of the OSHA standards is to ensure that an employer 'furnish[es] to his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.'" *Id*. (citing 29 C.F.R. § 1903.1 and 29 U.S.C. § 651).

More importantly, OSHA regulations are simply "not relevant to the liability of a manufacturer to an employee of an industrial consumer." *Davis v. Hebden, Schilbe & Smith, Inc.*, 52 F.3d 320, 1995 WL 231841, at *1 (4th Cir. 1995). As explained by the *Norris* Court:

> The core of Dr. Ketchman's opinion is exactly the type of evidence rejected by the Fourth Circuit in *Alevromagiros*. It is an attempt by an expert witness to insert his 'own subjective opinion' as to the defective design of a product when that product undisputedly complies with the relevant industry standard. *Alevromagiros*, 993 F.2d at 421. Dr. Ketchman's view that ROPS is mandatory on the Hustler Z is based on an untested and unsubstantiated theory of what the law should be—that the

manufacturer should provide an accident-proof product—in direct contravention to the actual law of the Commonwealth of Virginia.

*Norris*, 139 F.Supp.3d at 750.

Further, the specific OSHA standard cited by Dickinson, OSHA 1926.1414, applies to "Cranes and Derricks in Construction," **_not_** treestands. **Exhibit 3, OSHA 1926.1414 Title**. It does not apply, nor seek to apply to treestands. A treestand is neither a Crane nor a Derrick. In fact, the published purpose of the OSHA standards is to ensure that an **_employer_** "furnish[es] to his **_employees_** employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 C.F.R. § 1903.1 (emphasis added); *see also* 29 U.S.C. § 651. As admitted by Dickinson himself, "the OSHA regulations do not in any way, shape, or form reference treestands," and are "written to provide safe workplaces." **Exhibit 2,** *Dickinson Dep. at 47-48*.

### 3. The *Machinery Handbook* Does Not Apply to the Treestand Industry

Third, the *Machinery Handbook* has absolutely no application to the designs of a treestand. The *Handbook* does not discuss *treestands* or any other hunting equipment.[2] In the section referenced by Plaintiff relating to the purported factor of safety, the handbook is actually discussing hoisting applications over a sheave using a single wire rope, not the application here where there is no sheave and no hoisting. The *Handbook* clarifies this by specifically noting that any factor of safety "should take into account such associated factors as friction, load **_caused by bending around each sheave_**, acceleration and deceleration, and **_if a long rope is used for_**

---

[2] Likewise, because it does not set itself as an industry standard, it does not discuss automobiles, aircraft, motorcycles, ATV's, televisions, or other industries. Yet, no expert would claim it applied to those industries.

***hoisting***, the weight of the rope at its maximum extension." None of those "factors" apply in the present case. The *Handbook* simply does not apply to the present case.[3]

Further, the referenced *handbook* also does not apply because it is discussing the use of only a single strand of wire rope and not a complete cable assembly. The cable assembly in the present case is not a single wire rope. Instead, the product uses a cable assembly system, with two wire rope strands contained within aluminum spacers and wrapped in plastic. This x-ray scan of the system shows that the system uses two strands of wire rope, aluminum spacers and plastic coating to form a cable assembly for use in this system:



Thus, the present case does *not* involve a single wire rope and the reference to the *Machinery Handbook* simply does not apply.[4]

For these reasons, the *Machinery Handbook* does not apply to this industry or product and should be excluded under *Sardis*. This is vital in the present case since Dickenson's calculations and testing demonstrate that the product far exceeds the actual factor of safety required by standards applicable to the industry and is thus safe for its intended use. As explained by the *Sardis* Court, such references to inapplicable standards should be barred at trial and the motion should be granted.

---

[3] Plaintiff's argue that this portion of the Machinery Handbook does not "only" apply to applications in which a single wire rope is stretched around a sheave. However, this is precisely what that sentence is stating.

[4] At oral argument at the Motion for Summary Judgment, Plaintiff's counsel argued that the TMS and ASTM industry standards factor of safety does not apply to the cable assembly. However, since the cable assembly is the sole portion of the stand that travels around the tree and holds the treestand in place, this argument is simply erroneous.

### C. THE OSHA REGULATIONS AND THE MACHINERY HANDBOOK ARE INADMISSIBLE BECAUSE THEY ARE INADMISSIBLE HEARSAY

References to these sources should also be excluded because they are inadmissible hearsay. Such "evidence" necessarily comprises out of court statements that Plaintiff hopes to introduce to prove the truth of the matter asserted, or inadmissible hearsay. FED. R. EVID. 802. "Hearsay," is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Hearsay evidence is inadmissible because the person making the statement is not subject to the scrutiny of the jury, not under oath, and not available for cross-examination by the opposing party. McCormick on Evidence 726-29, § 24 (3d ed. 1984); FED. R. EVID. 802. Any documentary evidence offered to prove the truth of out of court statements or arguments or remarks of counsel regarding such evidence, is inadmissible hearsay. FED. R. EVID. 801, 802. Because these sources are out of court statements, they are classic hearsay and should be precluded.

### III. CONCLUSION

For the reasons set forth above, Plaintiff should be precluded from offering pertaining to Occupational Safety and Health Administration's standards and the *Machinery Handbook*'s purported "standards."

Dated: October 18, 2021              Respectfully submitted,

                                     */s/ Barry B. Sutton*
                                     Barry B. Sutton, *Admitted PHV*
                                     Steven D. Brock, *Admitted PHV*
                                     Attorney for Alliance Outdoor Group, Inc. and
                                     Alliance Outdoors Products, Inc. d/b/a X-Stand
                                     Treestands
                                     CLARK HILL PLC
                                     151 South Old Woodward, Suite 200
                                     Birmingham, MI 48009

bsutton@clarkhill.com
sbrock@clarkhill.com
Sutton Phone: (313) 964-8577
Brock Phone: (248) 988-1811

*/s/ Nathan H. Schnetzler*
Nathan H. Schnetzler
Virginia State Bar #: 86437
Sean C. Workowski
Virginia State Bar #: 36120
Attorney for Alliance Outdoor Group, Inc. and Alliance Outdoors Products, Inc. d/b/a X-Stand Treestands
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
Roanoke, Virginia 24011
Phone: (540) 772-4600
Fax: (540) 772-9167
Email: nschnetzler@faplawfirm.com
sworkowski@faplawfirm.com

## CERTIFICATE OF SERVICE

I certify that on October 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Nathan H. Schnetzler*
*Of Counsel*
