IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

RICHARD WALKER,

      Plaintiff,

v.

                                                Case No: 3:20-cv-773

ALLIANCE OUTDOOR GROUP, INC.
And ALLIANCE OUTDOORS
PRODUCTS, INC., d/b/a X-STAND
TREESTANDS,

      Defendants.

---

**DEFENDANTS ALLIANCE OUTDOOR GROUP, INC.'S AND ALLIANCE OUTDOOR PRODUCTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE PURPORTED "STUDIES" AND ARTICLES ABOUT HARNESS USE**

## I. INTRODUCTION

In this case, Plaintiff Richard Walker ("Plaintiff") claims he was injured while using a climbing treestand sold by Defendants Alliance Outdoor Group, Inc. and Alliance Outdoors Products Group, Inc. ("AOP"). Like other treestands, the subject treestand was co-packaged with a full body safety harness, which protects a user from hitting the ground during a fall event. Nevertheless, immediately prior to the purported incident, Plaintiff consciously and purposefully detached his harness from the tree (in violation of the written warnings and instructions). Plaintiff contends that he detached his full body safety harness from the tree due to a vine.

Throughout this litigation, Plaintiff has consistently relied upon purported "studies" and articles discussing "harness use" purporting to show that users may not use harnesses. However, under applicable law, these purported "studies" and articles are "classic hearsay," and are wholly unreliable. Federal courts across the nation have consistently held that such evidence is

inadmissible at trial. Accordingly, this Court should grant AOP's Motion *in Limine* to Exclude Purported "Studies" and Articles About Harness Use.

## II.     STATEMENT OF FACTS

### A.     THE SUBJECT PRODUCT

The present case arises out of the use of 2015 model year Silent Adrenaline Climbing Treestand sold by AOP. **Ex. A**; *Instruction Manual*. Like any treestand, the subject treestand is primarily designed to provide a hunter with a method by which they can climb a tree to a position above and nearer to the game they are hunting. A climbing treestand is a style of treestand that allows an individual hunter to actually climb the tree by using the stand itself. *Id.*

Since the hunter utilizes the treestand in an elevated position, AOP provides an entire climbing *system*, including not only the climbing seat and platform sections, but also a full body harness which attaches around the hunter's arms, torso and legs and anchors through a tether to the tree in the event of a fall. *Id.* The treestand also included written instructions and a video to demonstrate safe use of the system. *Id.* The instructions carefully warn and instruct the user on the proper and safe method of using the product and explicitly advise the user of the importance of following all of the stated instructions, especially the need to wear the harness at all times. *Id.*

Indeed, throughout the manual, the instructions advise the user of the necessity of using the provided full body harness at all times when using the product. *Id.* In particular, the instructions advise the user to attach the provided full body harness to the tree prior to setting foot on the stand and to remain attached to the tree at all times after leaving the ground. *Id.* To the same, the instructions also advise the user to not remove the full body harness from the tree until the user is firmly back on the ground. *Id.* These warnings and instructions are repeated throughout the manual numerous times. *Id.* Notably, the instructions also provide pictographs showing how to use the

harness in a way that allows the hunter to climb and descend the tree without ever detaching the harness. *Id.*

### B. PLAINTIFF'S INTENTIONAL DECISION TO NOT CONSISTENTLY WEAR THE FULL BODY SAFETY HARNESS

During his deposition, Plaintiff admitted that it was essential to wear and attach the full body safety harness at all times when using the product. **Ex. B**; *Deposition Transcript of Plaintiff,* at p. 146. In particular, Plaintiff testified:

> Q    Okay. And you knew as a user of these, of these products, that it was essential for you to wear your harness and have it attached to the tree at all times?
> A    Yes.

*Id.* Plaintiff also agreed that following the instructions was important to ensure that the product was used safely. *Id.* at p. 103. He testified:

> Q    As a consum- -- consumer --
> A    Yes.
> Q    -- the person that's purchasing these products, don't you look and rely upon the instructions to tell you how to safely maintain the product?
> A    Of course.
> Q    Okay. That's where you'd expect them to be; right?
> A    How to, how to, how to maintain it, you said?
> Q    Right.
> A    Okay.
> Q    Okay. And you know that you have to follow the instructions in order to make sure that you're safely using the product; right?
> A    Uh-huh.
> Q    Is that a "yes"?
> A    I would -- oh, yes.

*Id.*

Despite this knowledge, Plaintiff testified that he intentionally disregarded the known and understood instructions and decided to not use the product as intended. *Id.* at pp. 219-221. Instead of using the required fall arrest system at all times while off the ground (as required in the warnings and instructions), Plaintiff testified that he knowingly detached his harness from the tree while in

an elevated position. *Id*. at pp. 213-215. During his deposition, Plaintiff admitted that had he been connected to the tree as was required, he would not have fallen to the ground and been injured. *Id.* at pp. 147-148. He testified:

> Q  So, my question is specific. So, question. Counsel's objected to form -- okay -- but my question is specific, which is, if you were attached to the tree with your harness at the time the incident occurred, wouldn't you agree with me that you would not have fallen to the ground?
> A  Yes.

*Id.* at pp. 147-148.

### C. PLAINTIFF'S THEORIES

Throughout this litigation, Plaintiff has consistently sought to reference purported "studies" and articles discussing "harness use." Indeed, to support his claims, Plaintiff has relied upon two purported "studies" and articles discussing harness use during motion practice. AOP's counsel has not had the opportunity to depose the authors or publishers of the purported "studies" and articles.

### III. STANDARD OF REVIEW

It is well established that a motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2; 105 S. Ct. 460; 83 L. Ed. 2d 443 (1984). Motions *in limine* "may be directed toward barring specified evidence or argument and may be based on any of the grounds available under the Federal Rules of Evidence." 3 James Wm. Moore, Moore's Federal Practice § 16.77(3)(d)(ii) (3d ed. 2013). The practice of these rulings "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce,* 469 U.S. at 41 n. 4. The decision to admit or exclude evidence is committed to the sound discretion of the district court. *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996) (citing *United States v.*

*Bostian*, 59 F.3d 474, 480 (4th Cir. 1995)). A motion *in limine* must be granted when the evidence "is clearly inadmissible on all potential grounds." *Emkami v. Bolden*, 241 F. Supp. 3d 673, 681-682 (E.D. Va. 2017) (internal quotation omitted).

IV.     **ARGUMENT**

    A.     THE "STUDIES" AND ARTICLES ARE INADMISSIBLE HEARSAY.

Under federal law, "[h]earsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *U.S. v. Beltre,* 188 F.3d 503, *3 (4th Cir. 1999) (quoting Fed. R. Evid. 801(c)); *See also U.S. v. Pinion*, 452 Fed. App'x. 339, 341 (4th Cir. 2011); *U.S. v Moore*, 748 F.2d 246, 248 (5th Cir. 1984) (internal citations omitted). In particular, Fed. R. Evid. 801 provides in relevant part:

(a) **Statement.** "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, fi the person intended it as an assertion.
(b) **Declarant.** "Declarant" means the person who made the statement.
(c) **Hearsay.** "Hearsay" means a statement that:
    1) the declarant does not make while testifying at the current trial or hearing; and
    2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801(a)-(c).[1] "Hearsay is generally not admissible in evidence." *Pinion*, 452 Fed. Appx. at 341 (citing Fed. R. Evid. 802). Hearsay is not admissible unless any of the following provides otherwise: (1) a federal statute; (2) the Federal Rules of Evidence; or (3) other rules prescribed by the Supreme Court. *See* Fed. R. Evid. 802.

"In the Anglo-American adversary system of law, courts usually will not admit evidence unless its accuracy and trustworthiness may be tested by cross-examination." *Dallas Cty. v.*

---

[1] Fed. R. Evid. 801(d) identifies two types of statements as not hearsay. However, it is clear that the two "studies" and articles challenged herein do not satisfy either one, as the authors and publishers were not subject to cross-examination and are not the opposing party to this litigation. *See* Fed. R. Evid. 801(d)(1)-(d)(2).

*Commercial Union Assur. Co.,* 286 F.2d 388, 391 (5th Cir. 1961). Indeed, the Supreme Court of the United States has "recognized that cross-examination is the 'greatest legal engine ever invented for the discovery of truth.'" *Kentucky v. Stincer*, 482 U.S. 730, 736; 107 S. Ct. 2658; 96 L. Ed. 2d 631 (1987) (quoting *California v. Green*, 399 U.S. 149, 158; 90 S. Ct. 1930; 26 L. Ed. 2d 489 (1970)). In turn, courts across the nation have uniformly determined that "articles are 'classic, inadmissible hearsay.'" *Hicks v. Charles Pfizer & Co. Inc*., 466 F. Supp. 2d 799, 804-805 (E.D. Tex. 2005) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005); *The Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 166 n. 8 (3d Cir. 2001); *Miller v. Tony & Susan Alamo Found*., 924 F.2d 143, 146 (8th Cir. 1991); *Pennington v. Vistron Corp*., 876 F.2d 414, 427 n. 15 (5th Cir. 1989); *Dallas Cty.,* 286 F.2d at 392; *Achee v. Port Drum Co*., 197 F. Supp. 2d 723, 730 n. 5 (E.D. Tex. 2002); *Ladner v. City of N.Y.*, 20 F. Supp. 2d 509, 519 (E.D. N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir.), *cert. denied,* 528 U.S. 1006; 120 S. Ct. 502; 145 L. Ed. 2d 388 (1999); *Dowdell v. Chapman*, 930 F. Supp. 533, 541 (M.D. Ala. 1996); *Tilton v. Capital Cities/ABC, Inc*., 905 F. Supp. 1514, 1544 (N.D. Okla. 1995), *aff'd*, 95 F.3d 32 (10th Cir. 1996), *cert. denied*, 519 U.S. 1110; 117 S. Ct. 947; 136 L. Ed. 2d 836 (1997)); *See also Gantt v. Whitaker*, 57 Fed. App'x. 141, *7 (4th Cir. 2003) (citing *United States v. ReBrook*, 58 F.3d 961, 967 (4th Cir. 1995)); *Nooner v. Norris*, 594 F.2d 592, 603 (8th Cir. 2010). Indeed, "[t]hey are not sworn or certified, and the authors are not subject to cross-examination." *Hicks*, 466 F. Supp. 2d at 805 (citing *Dowdell*, 930 F. Supp. at 541); *See also Dallas Cty.,* 286 F.2d at 391–92 ("Here, therefore, the plaintiff argues that the newspaper should not be admitted: 'You cannot cross-examine a newspaper.' Of course, a newspaper article is hearsay, and in almost all circumstances is inadmissible."). In sum, "[p]rinted books of publications are not received in courts of justice as evidence of any fact stated in them [because] the statements made therein are not uttered under

6

oath and no opportunity for cross-examination of their author is afforded." *Dallas Cty.*, 286 F.2d at 392 n. 2. Accordingly, this type of evidence is consistently excluded by federal courts. *See e.g., Gantt*, 57 Fed. App'x. at 150; *Cooper v. McDermott Int'l, Inc.*, 62 F.3d 395, *5 (5th Cir. 1995) ("All five disputed contacts are based upon information Cooper gained from publications. Cooper does not deny that accounts of events and facts in newspapers, magazines, and books are inadmissible hearsay.") (citing *Dallas Cty.*, 286 F.2d at 391-92); *United States v. Parker*, 991 F.2d 1493, 1500 (9th Cir. 1993) (excluding magazines); *Ray v. Edwards*, 725 F.2d 655, 658 (11th Cir. 1984) (noting newspaper article was exclude as hearsay); *Shelby v. Pepsico, Inc.,* 784 F. Supp. 750, 757 (N.D. Cal. 1991), aff'd sub nom *Nesbit v. Pepsico*, 994 F.3d 703 (9th Cir. 1993) (excluding magazine article); *United States v. One Device Intended for Use as a Colonic Irrigator*, 160 F.2d 194 (10th Cir. 1947) (finding that the district court erred in admitting medical books and treatises); *In re Allen*, 106 F.3d 582, 603 n. 13 (4th Cir. 1997) ("The articles, of course, constitute unsworn hearsay, entitled to no weight.") (citations omitted).

Here, the challenged articles and "studies" propounded by Plaintiff regarding (or discussing) harness use are, like other published materials, "classic hearsay." *Hicks*, 466 F. Supp. 2d at 804–05. First, it is undisputed that AOP's counsel has not had the opportunity to cross-examine the declarants (*i.e.*, the authors and publishers) of the facts, purported data, and statements contained in the "studies" and articles. *See Dallas Cty.*, 286 F.2d at 392 n. 2. Indeed, the materials proffered by Plaintiff discussing harness use are highly unreliable due to this lack of cross-examination. Second, it is undisputed that the statements contained in the "studies" and articles were uttered and drafted outside this current litigation. *See* Fed. R. Evid. 802. In other words, the statements and facts contained in the articles and "studies" were not drafted by the authors while they were under any oath or the penalty or perjury. Accordingly, the declarants (*i.e.,* the authors

and publishers) had no motive to tell the truth. Rather, most (if not all) of the articles and purported "studies" were located by Plaintiff's counsel, which further demonstrates that these documents are unreliable and must be excluded under the prohibition against hearsay evidence.

Further, it is anticipated that Plaintiff will attempt to use the alleged statements and the purported facts regarding harness use contained in the documents to prove the truth of the matter asserted. For instance, in this case, Plaintiff failed to have his harness attached to the tree at all times when off the ground (which is contrary to the express warning and instructions). It is anticipated that Plaintiff will attempt to argue that his clear misuse of the product was appropriate (it was not). In turn, Plaintiff will likely use the purported facts and statements contained in the "studies" and articles to demonstrate that his use of the product was appropriate or foreseeable (it was not). Accordingly, Plaintiff will attempt to use the articles and "studies" to prove the truth of the matter asserted (*i.e.*, that his improper use of the harness was appropriate), which is prohibited under Fed. R. Evid. 801 and Fed. R. Evid. 802. *See also Strong v. RG Indus., Inc.,* 691 F. Supp. 1017, 1018-1019 (S.D. Miss. 1988) ("The particular articles relied upon by plaintiffs are entitled 'Snub–Nosed Killers: Handguns in America' and 'ROEHM: 'I Want to Make Better Guns'' Both articles reference the frequency with which Roehm handguns are involved in street crimes and the latter notes that 'Americans came in the 1950's and interested the Roehms in the manufacture of inexpensive handguns for the market in the United States.' This evidence, offered by plaintiffs in support of their contention that Roehm has placed defective handguns into the stream of commerce, is clearly inadmissible hearsay which cannot be considered on this motion."). Accordingly, this Court should grant AOP's Motion in *Limine* to Exclude Purported "Studies" and Articles About Harness Use.

### B. THE "STUDIES" AND ARTICLES ARE IRRELEVANT, PREJUDICIAL, MISLEADING, CONFUSING.

Pursuant to Federal Rule of Evidence 402, "all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by act of Congress, by these Rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. However, even if a party meets the low threshold of relevancy, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.

Even if the "studies" and articles were not classic inadmissible hearsay (they are), admission, testimony, or argument surrounding the "studies" or articles is irrelevant, would create juror confusion, prejudice AOP, and result in a substantial amount of wasted time at trial. *See* Fed. R. Evid. 403 (noting that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence). First, both "studies" are fundamentally flawed in that the studies are outdated and the sample of individuals supposedly questioned about wearing harnesses while using a treestand was not limited to hunters using a climbing treestand (such as the one at issue here). This distinction is important because, while a climbing treestand user should wear and attach a full body safety harness at all times after leaving the ground, the same is not true for users of other treestands. By way of example, when using a *ladder* treestand, one does not attach the harness while climbing

9

the ladder but attaches it after climbing to height. Since the "studies" were not limited to people using a climbing treestand (such as the one at issue here), the "studies" cannot even meet the bar of relevancy.

Second, AOP would be severely prejudiced if supposed "data" surrounding harness use for different types of treestands (*i.e.*, harness use for ladder treestands) was presented to the jury. Admission of the articles and "studies" open the door to a host of "mini-trials" in which AOP would be required to show how the claimed "studies" and the purported "data" contained therein are irrelevant to the case at issue. AOP would also be forced to present evidence and expert testimony that the purported "data" and statements contained therein are not only outdated but also skewed by the inclusion of other types of treestands. This would result in a time consuming and highly prejudicial "mini trial" or a "trial in a trial" surrounding harness use for unrelated products (*i.e.*, ladder stands), which Federal Rule of Evidence 403 attempts to preclude. *See e.g., In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Systems Products Liability Litigation*, 810 F.3d 913, 921 (4th Cir. 2016) ("In other words, having a "mini-trial" could easily inflate the perceived importance of compliance and distract the jury from the central question before it-whether Bard's design was unreasonable based on any dangers it posed versus the costs required to avoid them."); *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 834 (8th Cir. 2005) (excluding evidence that "would have resulted in a trial within a trial"); *Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 2d 1201, 1219-1220 (D. Kan. 2008) ("In particular, the issue whether Vorhies and Stock made age-derogatory statements would have resulted in mini-trials and would have created confusion and waste of time, again opening the door to testimony that legions of Sprint managers inside and outside of plaintiff's chain of command did not make age-derogatory comments."). Such "mini-trials" increase the danger of jury confusion and improper juror speculation as well.

*In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Systems Products Liability Litigation*, 810 F.3d at 921-922; *United States v. Tail*, 459 F.3d 854, 861 (8th Cir. 2006). To avoid a substantial detour into collateral issues, AOP, pursuant to Federal Rule of Evidence 403, requests that this Court grant its Motion *in Limine* to Exclude Purported "Studies" and Articles About Harness Use.

### V. CONCLUSION

For the reasons set forth above, any articles or "studies" regarding (or mentioning or discussing) harness use should be precluded from trial in the present case. Therefore, this Court should grant AOP's Motion in Limine to Exclude Purported "Studies" and Articles About Harness Use and, thereby, preclude Plaintiff, his counsel, or his experts from presenting any evidence, soliciting any testimony, offering any testimony, or presenting any argument regarding any purported "studies" or articles that relate to, or discuss, harness use at trial

Dated: October 18, 2021    Respectfully submitted,

/s/ Barry B. Sutton
Barry B. Sutton, *Admitted PHV*
Steven D. Brock, *Admitted PHV*
Attorney for Alliance Outdoor Group, Inc. and
Alliance Outdoors Products, Inc. d/b/a X-Stand Treestands
CLARK HILL PLC
151 South Old Woodward, Suite 200
Birmingham, MI 48009
bsutton@clarkhill.com
sbrock@clarkhill.com
Sutton Phone: (313) 964-8577
Brock Phone: (248) 988-1811

/s/ Nathan H. Schnetzler
Nathan H. Schnetzler
Virginia State Bar #: 86437
Sean C. Workowski
Virginia State Bar #: 36120

        Attorney for Alliance Outdoor Group, Inc. and
        Alliance Outdoors Products, Inc. d/b/a X-Stand
        Treestands
        FRITH ANDERSON + PEAKE, P.C.
        29 Franklin Road, SW
        Roanoke, Virginia  24011
        Phone:  (540) 772-4600
        Fax:  (540) 772-9167
        Email:   nschnetzler@faplawfirm.com
            sworkowski@faplawfirm.com

## CERTIFICATE OF SERVICE

I certify that on October 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

                                          */s/ Nathan H. Schnetzler*
                                                 *Of Counsel*