IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:20cv773–HEH |
| | ) |
| ALLIANCE OUTDOOR GROUP, INC., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
**(Denying in Part and Granting in Part Defendants' Motion for Summary Judgment)**

This matter is before the Court on Alliance Outdoor Group, Inc. and Alliance Outdoor Products, Inc.'s (collectively "Defendants") Motion for Summary Judgment (the "Motion"), filed on September 2, 2021. (ECF No. 33.) Richard Walker ("Plaintiff") filed his Complaint on October 2, 2020, alleging products liability and breach of warranty claims against Defendants. (Compl., ECF No. 1.) Both sides have filed memoranda supporting their respective positions. The Court heard oral argument on the Motion on October 13, 2021. For the reasons that follow, the Court finds that genuine issues of material fact remain in dispute on Count One and Count Four of the Complaint, precluding summary judgment on those two claims. However, the Court will grant the Motion as to Counts Two and Three.

## I. STANDARD OF REVIEW

The standard of review for summary judgment is well settled in the Fourth Circuit. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidentiary basis on which such motions are resolved may include depositions, answers to interrogatories, admissions on file, and affidavits. Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 F. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to warrant a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248. Indeed, summary judgment must be granted if the nonmoving party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate . . . ." *Thompson Everett, Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). "[T]here must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Anderson*, 477 U.S. at 249–50). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland*, 487 F.3d at 213.

Courts may make inferences based on expert testimony in the record. *See Textron Inc. ex rel. Homelite Div. v. Barber-Colman Co.*, 903 F. Supp. 1558, 1565 (W.D.N.C. 1995). "Thus, the inferences a court is asked to draw by expert testimony must be reasonable in light of competing inferences." *Id.* "Neither the factual assumptions underlying an expert's opinion nor the expert's inferences from the facts assumed are

3

automatically established by the absence of directly countering expert opinion." *Erie Ins. Exch. v. Stark*, 962 F.2d 349, 353 (4th Cir. 1992). "The credibility of competing experts is a question for the jury only if the party with the burden of proof has offered enough evidence to sustain a verdict in its favor." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993).

## II. BACKGROUND

The parties have submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements, including the references to supporting evidence. As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson*, 477 U.S. at 248, 255. Applying this standard, this Court concludes that the following narrative represents the facts for purposes of resolving Defendants' Motion.

Plaintiff was an experienced hunter who purchased the 2015 model Silent Adrenaline XSCT X-Stand Treestand (the "Silent Adrenaline" or the "treestand") to use for hunting in May of 2015. (Pl.'s Resp. at 1, ECF No. 38.) Defendant Alliance Outdoor Products, Inc. sold the treestand and Defendant Alliance Outdoor Group, Inc. was involved in the manufacturing and distribution of the product.[1]

---

[1] Defendants allege that Alliance Outdoor Group, Inc. was not involved in the manufacturing, sale, or distribution of the product, however, Plaintiff points to deposition testimony by Defendants' 30(b)(6) witness that contradicts this assertion. (Pl.'s Resp. at 5.)

4

A treestand is a device designed to allow a hunter to ascend a tree and position themselves above and nearer to the game pursued. A climbing treestand, such as the Silent Adrenaline at issue in this case, is designed to aid the hunter in climbing up the tree. (Silent Adrenaline Manual at 9–11, ECF No. 34-1.) The Silent Adrenaline is equipped with an entire climbing system, which includes the climbing seat, climbing platform, and a full body harness. (*Id.* at 4.) To connect the climbing seat and platform to the tree, the hunter must wrap the provided cable around the tree and secure it into the seat and platform using bolts and pins. (*Id.*) The harness system goes around the hunter's torso, arms, and legs and includes a tether, which the hunter is instructed to attach to the tree at eye level before climbing. (*Id.* at 10.) According to the Silent Adrenaline instruction manual, users should always wear their safety harness when off the ground. (*Id.* at 2.) It further states the maximum weight capacity, including the user and his equipment, is 300 pounds. (*Id.*)

On October 14, 2018, Plaintiff used the Silent Adrenaline to climb a tree and hunt. (Pl.'s Resp. at 2.) While climbing, Plaintiff alleges that he was wearing the safety harness as instructed, however, at 12 feet he reached a large vine and the tether of the safety harness would not move over the vine. (Walker Dep. at 213:14–218:25, ECF No. 34-4.) Plaintiff attempted to remove the vine but was unsuccessful, so he detached his harness from the tree to move it above the vine and "that's the last thing [he] remember[s] until [he] was on the ground." (*Id.* at 217.) The cable attachment for the upper portion of the Silent Adrenaline separated and broke "at the point where the cable

5

system merges with the aluminum arm of the seat . . . ."[2] As a result of the fall, Plaintiff suffered a variety of injuries.

### III. DISCUSSION

Plaintiff filed this action on October 2, 2020. Plaintiff alleges that the treestand in question had design defects that rendered it unsafe for its typical use. Specifically, he alleges the cable assembly that broke was defective and Defendants failed to warn him of the dangers associated with the use of the cables and the length of time that these cables could safely remain in use. (Compl. at 4, 8.) Additionally, Plaintiff brings a claim for breach of implied warranties and the express warranty that the Silent Adrenaline could support weight up to 300 pounds. (*Id.* at 6–7.) In the Motion, Defendants allege Plaintiff was contributorily negligent, thus, his negligence claims for defective design (Count 1) and failure to warn (Count Four) should be barred. They further allege that Plaintiff's implied warranty claim (Count 2) and express warranty claim (Count 3) should be barred because Defendants disclaimed all implied warranties and limited the express warranties to a 12-month period. Finally, Defendants allege that Summary Judgment should be granted as to all of Plaintiff's claims because the Silent Adrenaline was tested and certified under industry standards, therefore, it was safe for its intended use. For the following reasons, Defendants' Motion will be denied as to Counts One and Four and granted as to Counts Two and Three.

---

[2] The Court bases its explanation of the fall on the evidence in the light most favorable to the Plaintiff. Nonetheless, it should be noted that the parties disagree whether the cable separation was the cause of the accident or if it occurred as a result of Plaintiff falling onto the upper portion of the treestand. However, that is not at issue here. (Mot. at 11, ECF No. 34.)

6

## Contributory Negligence

Defendants first allege that Plaintiff's two negligence claims, Count One and Count Four, are barred because Plaintiff was contributorily negligent. A contributory negligence defense bars a plaintiff's claim if "[he] failed to act as a reasonable person would have acted for his own safety under the circumstances" and if plaintiff's negligence was a proximate cause of his injury. *Rascher v. Friend*, 689 S.E.2d 661, 664 (Va. 2010) (quoting *Jenkins v. Pyles*, 611 S.E.2d 404, 407 (Va. 2005)). Typically, whether a person acted reasonably under the circumstances is a question of fact for the fact finder and only becomes a question of law if "reasonable minds could not differ about what conclusions could be drawn from the evidence." *Id.* (quoting *Jenkins*, 611 S.E.2d at 407).

Defendants assert that it was negligent for Plaintiff to remove his harness because the instruction manual instructs the user to wear the harness at all times. Defendants further point out that Plaintiff and Plaintiff's expert admitted that using the harness at all times was "the total safe way" to use the Silent Adrenaline. (Walker Dep. at 56:10, Dickinson Dep. at 112:2–5, ECF No. 34-5.) Plaintiff and Plaintiff's expert additionally acknowledge that the accident would not have occurred if Plaintiff had been wearing his harness. (*Id.* at 148:1–3, Dickinson Dep. at 111:10–16.)

While not wearing the harness may have been a proximate cause of the accident, there is a genuine dispute of material fact as to whether Plaintiff acted reasonably in removing the harness under the circumstances. Plaintiff recounts in his deposition that he was climbing up the tree when he encountered a large vine and he could not maneuver his

7

harness over the vine without untethering it from the tree. (Walker Dep. at 214:1–14.) Additionally, Plaintiff noted in his deposition that sometimes a person climbing with the harness will have to untether the harness to move it over a piece of bark or other climbing impediments. (*Id.* at 56:23–57:1–10.) Thus, despite the warnings in the instruction manual, it may be impractical to utilize the treestand with the harness attached to the tree at all times. This suggests that reasonable minds could differ on whether, under the specific circumstances, it was reasonable for Plaintiff to remove his harness despite the cautions given in the instruction manual. Consequently, this remains a question of fact for the jury and summary judgment, based on a theory of contributory negligence, will be denied as to Counts One and Four.

## Breach of Warranty Claims

Defendants argue that their disclaimer of all implied warranties bars Count Two and their Standard Limited Warranty bars Count Three. Plaintiff counters that Defendants waived their disclaimer defense because they did not plead it as an affirmative defense in their Answer. Pursuant to Federal Rule of Civil Procedure 8, "a party must affirmatively state any avoidance or affirmative defense, including: . . . waiver." A warranty disclaimer is a waiver under Rule 8. *Williams v. Gradall Co.*, 990 F. Supp. 442, 446 (E.D. Va. 1998) (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 23 (2d Cir. 1995)). Defendants assert that the language in paragraph 21 of their Answer was sufficient to raise the affirmative defense[3], however,

---

[3] Paragraph 21 of Defendants' Answer included the following affirmative defense: "Plaintiff's claims against Defendants are barred because Plaintiff, by his or her own acts, omissions,

8

the Court finds that this language is insufficient to constitute an affirmative defense of disclaimer. The language was far too vague to put Plaintiff on notice that Defendants were raising a disclaimer defense.

Although Defendants failed to raise the affirmative defense in their answer, Plaintiff has not shown that the late disclosure is prejudicial or that they were not on notice of this defense. "When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009); *see also Valley Fresh Produce, Inc. v. Western Skyways, Inc.*, No. 17cv1450, 2019 WL 4695668 (D. Colo. Sept. 21, 2019) (finding plaintiffs did not show any prejudice resulting from the late disclosure of a defense even when defendants did not raise it until the final pretrial order). The parties have had two settlement conferences, Plaintiff had access to the Silent Adrenaline Manual, which included the disclaimer, and Defendants filed this motion two months before trial, giving Plaintiff sufficient notice such that he will not be prejudiced by allowing Defendants to assert a disclaimer defense.

Under Virginia Law, to disclaim, modify, or limit an implied warranty, the language must be in writing, be conspicuous, and mention the word "merchantability". Va. Code Ann. § 8.2-316. The Silent Adrenaline disclaimer is in writing and uses the word merchantability as required. (Silent Adrenaline Manual at 15.) Defendants

---

conduct, and activities, is estopped from asserting and/or has waived any potential claims against Defendants." (Answer at 13, ECF No. 10.)

9

maintain that the disclaimer was in all capital letters and set apart in a subparagraph entitled **"No Other Warranties"** so it was conspicuous. Conspicuous means "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." Va. Code Ann. § 8.1-201(10). A disclaimer is typically considered conspicuous if it is in a larger or contrasting typeface than the language around it. Va. Code Ann. § 8.1-201(10); *Armco, Inc. v. New Horizon Dev. Co. of Virginia, Inc.*, 331 S.E.2d 456, 459 (Va. 1985); *Lacks v. Bottled Gas Corp. of Virginia*, 205 S.E.2d 671, 673 (Va. 1974). Further, whether a disclaimer is conspicuous is a question for the Court. *Id.*

The Court in *Benedict v. Hankook Tire Co, Ltd.* noted that the examples of conspicuousness listed in § 8.1-201 "are not safe harbors." 295 F. Supp. 3d 632, 656 (E.D. Va. 2018). "Rather, what is required is a holistic assessment of whether a reasonable person 'ought to have noticed' the term at issue." *Id.* (finding a disclaimer in a catalog was not conspicuous because it did not require the customer to sign the disclaimer); *see George v. Bromwell's—The Fireplace People, LLC*, 425 F. Supp. 3d 632, 636–37 (E.D. Va. 2019) (finding a disclaimer was not conspicuous that was located on page 60 of a 62-page manual that did not invite the individual to read its terms or sign the disclaimer). In contrast to *Benedict* and *George*, which involved lengthy manuals that did not draw the user's attention to the disclaimer, the manual here is only 16 pages with the disclaimer located on page 15. The manual includes 13 pages of instructions on use and assembly and at the bottom of each page in a red box it states, "READ THIS MANUAL IN ITS ENTIRETY PRIOR TO USING THIS PRODUCT." On the 14th

10

page, the user is instructed to fill out and mail the included registration card or submit a similar card on the company website. (Silent Adrenaline Manual at 14.) The Standard Limited Warranty and disclaimer then appear on the 15th page immediately following the registration card. Based on these facts, the Court finds the disclaimer was conspicuous and included the proper terminology, thus, Defendants disclaimed the implied warranties. Plaintiff has offered no evidence that establishes a breach of an implied warranty that was not disclaimed by Defendants, therefore, there is no jury issue as to Count Two of Plaintiff's Complaint.

Defendants also assert that Plaintiff's express warranty claim, Count Three, is barred by Defendants' Standard Limited Warranty. Defendants made an express warranty that the Silent Adrenaline could support up to 300 pounds. (Silent Adrenaline Manual at 2.) On page 15 of the Silent Adrenaline Manual, the Standard Limited Warranty warrants that the product is "free from defects in material and workmanship for a period of twelve months from the original date of retail purchase." (Silent Adrenaline Manual at 15.) Assuming the weight limit is in fact an express warranty, which Defendants contend it is not, Plaintiff has made no contention why the 12-month period of the Standard Limited Warranty would not limit it. Plaintiff purchased the treestand in 2015 and the accident occurred in 2018, which means the warranty had expired. (Pl.'s Resp. at 1–2.) Plaintiff's only argument as to this point is that limiting or excluding consequential damages for injury to the person in the case of consumer goods is *prima facie* unreasonable, thus they cannot be excluded or limited. Va. Code Ann. § 8.2-719(3). While this is accurate, there is a distinction between a § 8.2-719 limitation on remedies

11

and a § 8.2-316 disclaimer of warranties. "By disclaiming a warranty, a party may seek to limit their contractual liability by reducing the number of situations in which the seller can be in breach of the warranty. By limiting or excluding remedies, a party only restricts remedies available once a breach has been established." *Reibold v. Simon Aerials, Inc.*, 859 F. Supp. 193, 197 (E.D. Va. 1994); *King v. Flinn & Dreffein Eng'g Co.*, No. 7:09cv410, 2012 WL 3133677, at *12 (W.D. Va. July 30, 2012). Plaintiff is right that Defendants cannot limit or exclude consequential damages for personal injury claims, but to get consequential damages, Plaintiff still has to prove there was a breach of warranty. Plaintiff has not provided any evidence why the 300-pound weight limit warranty would survive past the 12-month limitation. Therefore, there is no jury issue as to breach of express warranty and this claim must fail.

## Industry Standards

Defendants finally argue that any remaining claims should be dismissed because Plaintiff fails to overcome the presumption that the product, which was tested and certified to meet industry standards, was safe for its intended use. For a products liability case, under either a negligence or breach of warranty theory, the plaintiff must establish three elements: (1) "the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use[;]" (2) "the defect existed when it left the defendant's hands[;]" and (3) "the defect actually caused the plaintiff's injury." *Alevromagiros*, 993 F.2d at 420. Defendants argue that the tree stand was tested and certified under industry standards created by the Treestand Manufacturer's Association and adopted by ASTM International ("ASTM"), an international standards organization,

so it was safe for its intended use. (Mot. at 24.) Industry custom and usage is not always conclusive of due care, however, it may be "when there is no evidence to show that [the custom and usage] was not reasonably safe." *Turner v. Manning, Maxwell & Moore, Inc.*, 217 S.E.2d, 863, 868 (Va. 1975).

Plaintiff does not disagree that the treestand met industry standards. Instead, Plaintiff offers the expert testimony of William Dickinson ("Dickinson") to show the industry standards were not reasonably safe. Dickinson contends that "the industry standard for steel wire should be applied to the cable system, rather than the industry standard for tree stands generally." (Pl.'s Resp. at 24, Dickinson Dep. at 45:5–52:18.) Defendants rely heavily on the Fourth Circuit's opinion in *Sardis v. Overhead Door Corporation* to argue against the admissibility of Dickinson's testimony. 10 F.4th 268 (4th Cir. 2021). In *Sardis*, the Fourth Circuit found the district court had abused its discretion when it ruled "that the issues of relevance and reliability impacted only the weight of the experts' testimony, not their admissibility." *Id.* at 281. The Fourth Circuit additionally found that the expert's testimony about standards that did not apply to the product was unreliable. *Id.* at 289. However, that expert testified that, even though the standard did not apply, the product at issue breached the standard. *Id.* at 287. In contrast, Dickinson does not appear to be testifying that the breach of the steel wire standard is the basis for liability, rather, he seems to attempt to show that the ASTM standard for treestands is not reasonably safe. (Dickinson Dep. at 27:3–28:21, 37:11–38:20, 57:2–58:22.) As stated above, industry standards may not be conclusive as to safety of the product if there is evidence that the standards themselves are unsafe. *Turner*, 217

13

S.E.2d. at 868.

Further, Dickinson asserts that the ASTM industry standards are careless because they do not encompass real-world conditions. (Dickinson Dep. at 37:17–38:6.) For example, no testing was done on the effects of moisture, weathering, or corrosion on the treestand (Zupan Dep. at 126:13–128:6, ECF No. 38-21), however Dickinson testified in his deposition that the cables failed because of corrosion. (Dickinson Dep. at 8:11–20). Moreover, Plaintiff utilizes the recall of the 2017 model of the Silent Adrenaline as evidence that the standards were unsafe. The voluntary recall occurred because the cables in the 2017 model "may separate due to corrosion, posing a fall risk to users." (Safety Recall Notice, ECF No. 38-17.) Despite the 2017 model being certified under the same ASTM standards as the 2015 model, there were five incidents of cable separation due to corrosion, two of which resulted in injuries. (*Id.*) Thus, viewing the evidence in the light most favorable to the nonmoving party, there remains a genuine issue of material fact, specifically whether the industry standards are reasonably safe.[4]

## IV. CONCLUSION

Based on the foregoing analysis, Defendants' Motion for Summary Judgment will be denied as to Counts One and Four of Plaintiff's Complaint and granted as to Counts Two and Three.

---

[4] This analysis is based upon the present state of the record with regard to Plaintiff's expert testimony. The Court recognizes there is a hearing on October 21, 2021 on *Daubert* issues as to both parties' experts that may have a material effect on the case.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Oct. 19, 2021
Richmond, VA

15