**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

RICHARD WALKER,                                              Plaintiff,

v.                              Civil Action No.: 3:20-cv-773

ALLIANCE OUTDOOR GROUP, INC.,
And
ALLIANCE OUTDOORS PRODUCTS, INC.,
d/b/a X-STAND TREESTANDS,                              Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION
IN LIMINE TO EXCLUDE REFERENCES TO OTHER INCIDENTS**

Pursuant to Local Rule 7, now comes the Plaintiff, by counsel in this matter, and does submit Plaintiff's Reply to Defendants' Motion in Limine to Exclude References to Other Incidents.

I.    **Standard of review.**

Rule 401 of the Federal Rules of Evidence states that evidence is relevant if it "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

The Fourth Circuit has continually held that the Federal Rules of Evidence, "as validly enacted procedural rules, govern in diversity cases." Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995). Because Federal Rules of Evidence 401, 402, and 403 do not "create friction with any Virginia 'evidentiary rule [that] either embodies or is closely tied to a state substantive policy,'" the Erie Doctrine applies, and Virginia evidentiary rules do not apply. Bilenky v. Ryobi Ltd., 2014 U.S. Dist. LEXIS 201762, *20 (E.D. Va 2014) (citing Hottle, 47 F.3d at 109); see also Scott v. Sears. Roebuck & Co., 789 F.2d 1052, 1054 (4th Cir. 1986) (holding that admissibility of expert testimony in a federal court sitting by diversity jurisdiction is controlled by federal law);

Barron v. Ford Motor Co. of Canada, 965 F.2d 195, 199 (7th Cir. 1992) (holding that North Carolina's rule against the admission of testimony about a failure to wear one's seatbelt is a rule of evidence and thus inapplicable in federal court).

Moreover, the Eastern District of Virginia has held that the federal rules of evidence apply for admissibility of substantially similar incidents. See Sardis v. Overhead Door Corp., 2019 U.S. Dist. LEXIS 22940, *12 n. 9 (E.D. Va., Feb. 12, 2019); Bilenky, 2014 U.S. Dist. LEXIS at *21. The Eastern District of Virginia has also criticized past courts for using Virginia law to analyze evidentiary issues, when Federal law should be used, as required by the Erie Doctrine. Fairshter v. Am. Nat'l Red Cross, 322 F. Supp. 2d 646, 656 (E.D. Va. 2004) (Disregarding Blevins decision because "in support of its holding, the [Blevins] court cites to Roll 'R' Way, a Virginia state case discussed above, in which the court does not consider the admissibility of similar accidents pursuant to the Federal Rules of Evidence.")).

Defendants cite to Jones v. Ford Motor Co., as evidence that similar incidents are only admissible "for the limited purpose of proving notice or actual knowledge of an alleged defect." 204 Fed. Appx. 280, 285-86 (4th Cir. 2006). However, Jones erroneously applied Virginia law in that case, not federal law. See id. Federally, most Circuits have held that evidence of similar accidents "may be relevant to demonstrate the defendant's ability to correct known defects, the magnitude of the danger involved, the product's lack of safety for its intended use, notice of the existence of a defect, standard of care, or causation." McKnight by & Through Ludwig v. Johnson Controls, 36 F.3d 1396, 1410 (8th Cir. 1993); see Kline v. Zimmer Holdings, Inc., 662 Fed. Appx. 121, 124 (3d Cir. 2016); Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1082 (5th Cir. 1986); Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1268 (7th Cir. 1988); Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1246-47 (10th Cir. 2000); Hessen v. Jaguar Cars, Inc., 915 F.2d

641, 650 (11th Cir. 1990); Landis v. Jarden Corp., 5 F. Supp. 3d 808, 812-13 (W.V.N.D. 2014). Therefore, under the Federal Rules of Evidence, similar accidents may be used to prove more than notice or actual knowledge of an alleged defect. They can be used to demonstrate a design defect or causation.

Most Circuits require a showing of substantial similarity for a party to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect. See Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 889 (9th Cir. 1991); Jackson, 788 F.2d at 1082-83; Brooks v. Chrysler Corp., 252 U.S. App. D.C. 29, 786 F.2d 1191, 1195 (D.C. Cir. 1986); Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 754 (11th Cir. 1985); McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981); Julander v. Ford Motor Co., 488 F.2d 839, 846-47 (10th Cir. 1973). The Eastern District of Virginia has adopted these measures in Sardis. "Evidence of other incidents is admissible only if the incidents are substantially similar to the incident in question." Sardis, 2019 U.S. Dist. LEXIS at *12 (citing Bilenky, 2014 U.S. Dist. LEXIS at *7).

## II.    **The other accidents are substantially similar.**

Evidence of similar incidents should be admissible in this case. Plaintiff seeks to introduce evidence of five other accidents involving Silent Adrenaline treestands, the same brand that Mr. Walker was using. These accidents all occurred because the cable assembly of each treestand failed. This evidence is relevant under Rule 401 because it helps demonstrate that Mr. Walker's accident was caused by an under-designed cable, and not because he created dynamic force on the stand, as Defendants would argue.

Although the treestands in the similar incidents are not all the same model year as Mr. Walker's, Defendants have failed to produce any evidence that there have been any substantive changes to the design and manufacturing of the Silent Adrenaline treestands. In fact, Defendants

provided Plaintiff with the 2017 designs of the stand. See Exhibit A, Meyer Dep. 26-27. When questioned about the 2017 design, Defendants' corporate designee, Robert Meyer stated that he is "not a hundred percent positive that [the 2015 design] is not the same drawing as the 2017 model. Id. at 37. Similarly, the only blueprint for the steel wire rope produced by the defendants is from 2013. No subsequent blueprints have been produced reflect any changes, and the same design was utilized from 2015 through 2018.

Furthermore, Meyer could only testify to one modification to the design of the Silent Adrenaline treestand since it was originally created in 2013. Exhibit A, Meyer Dep, at 40-43. That consisted of an increase in the size of a bolt to the adjustable arms, which prompted an increase in the tubing that creates the arms, and an increase in the thickness of the "plastic coating" component of the cable system. Id. The modification occurred sometime between 2018 and 2020, after all stands used in any of the accidents were produced.  Id. at 44.  Additionally, the modification had nothing to do with trying to prevent injuries and it was a preference of the manufacturing company. Id. at 45. Therefore, all stands involved in these similar incidents are functionally the same stand, with no apparent design modifications that would challenge whether the accidents happened in the same way.

Defendants did change steel wire rope manufacturers between 2015 and 2017. Exhibit B, Defs. Ans. to Interrog., No. 12. From 2015 to 2016 the steel wire ropes were manufactured by an unknown producer. Id. In 2017, Defendants switched to Chaorui Auto Parts. Id.  However, this is a difference without any significance at all. Defendants themselves cannot articulate why a change from one Chinese manufacturer to another between 2015 and 2017 made any difference at all to the product. Company President Nathan Stieren testified:

**Q:**      What were the differences between the 2015 and later models?

> **A:**    I don't know the answer to that.

Exhibit C, Stieren Dep., 42. Keith Edberg testified as follows:

> **Q:**    Do you know why that would have made a difference?  The fact that they were made by a different manufacturer?
>
> **A:**    I do – I do not.

Exhibit D, Edberg Dep, 51-52. The former product development manager, Anthony Overbaugh, was also deposed, stating:

> **Q:**    Okay.  Do you recall if there was ever any change in the design or type of cable that was being used on the Silent Adrenaline or Apache?
>
> **A:**    I don't recall any changes to that.
>
> **Q:**    You don't recall any changes to that?
>
> **A:**    No, I don't recall any.
>
> **Q:**    And when you say that, I just want to clarify, does that mean there may have been but you don't recall, or you – you believe that no changes were made?
>
> **A:**    I would be speculating either way.
>
> **Q:**    Okay.  Well, let me ask you this:  If changes were made in the cable and you are the product development person, would they have come through you?  Would you have known about it?  I'm not saying you remember now, but would it have been something that you would have known about?
>
> **A:**    It's – it's something that we would demand to be told, but does every factory do that?  I would be speculating to say that they do or they don't.

Exhibit E, Overbaugh Dep., 39-40. Most tellingly, Overbaugh also testified that if a product changes, it needs to be re-tested under TMA standards.  Id. at 46.  The product was not retested between 2015 and 2017.  This seems dispositive, because even under TMA standards, switching manufacturers was not enough to justify new testing. In short, the 2017 product **is the same** as the 2015 product.

Defendants also argue that none of the other accidents occurred in a similar manner to Mr. Walker. They once again rely on an out of context portion of Mr. Walker's deposition to allege that Mr. Walker's accident occurred when he was reaching over his head to attach the strap and was not touching the stand at all. However, Mr. Walker clarified his testimony later in his deposition:

**Q:** Okay. But at the time the accident occurred, you were not in the process of climbing, you were in the process of standing to move that strap; right?

* * *

**A:** I would have had weight on it till I got up like this.

**Q:** Okay. But you showed me now just two times –

**A:** You asked me how I would do it. I said, yes. I would do it like this.

**Q:** Okay. But you were in the process of doing that when you moved up?

**A:** I'm sitting here, undid it, going to get up. That's all I remember except looking up at the stars.

**Q:** Okay.

**A:** Yes. I would have put it around the tree.

**Q:** Okay. When I asked you, when I asked you where your weight was, you told that your weight were on your feet, because you were in the process of standing up?

**A:** No. You told me my weight was on the feet.

You said, your weight would mostly be on the feet.

Yes, if I was standing up, but I still had, I had to have weight on that side there. It's logical. I'm not going to -- something's not going to break if you don't have –

**Q:** You don't think you had weight on your butt. You pointed to your hip area; right?

**A:** What?

**Q:**    You pointed that you might have had some weight on the, on the hip area, but not on your butt; right?

**A:**    Look. I'm going to tell you what. Two years ago when I'm sitting up there, when I undid that sitting, went to get up, everything broke.

Now, did it break as I got up? I don't know.

Did it break after I got up and something touched it? I don't know; okay?

I keep saying that there's this blank spot.

\* \* \*

**Q:**    You're not suggesting that any of your earlier testimony that you gave was not accurate; you just did the best you could with what you remember; right?

**A:**    You're confusing me now.

**Q:**    Okay. Your earlier testimony when we were talking, you're not, you're not suggesting that was inaccurate are you?

You're testifying truthfully; right?

**A:**    I thought I was pretty truthful, but the thing is, **you're asking me how I would hook something up, and I'm telling you.**

Exhibit F, Walker Dep. 279-82. Notably, Mr. Walker clarifies that he was explaining how he would hook up the strap, not necessarily his exact movements at the time of the accident. It is Plaintiff's theory of the case that Mr. Walker was in the process of standing up when he fell. This is consistent with the other cases Plaintiff plans to admit as substantially similar.

### a. David Clayton's accident is substantially similar.

Mr. Clayton was using a 2017 Silent Adrenaline treestand at the time of his accident. Exhibit G, Clayton Compl., 4. On October 23, 2018, nine days after Mr. Walker's accident, the cable of Mr. Clayton's treestand broke while he was in the process of sitting in the treestand. Id.

at 4-5. Photographs of Mr. Clayton's stand show that his cable also broke where the cable meets the stand on the bolted side, just like Mr. Walker's. <u>Compare</u> Exhibit H, Photos of Clayton's Treestand; <u>with</u> Exhibit I, Photos of Mr. Walker's Treestand. Furthermore, Keith Edberg, one of Defendants' corporate designees, testified that Mr. Clayton's stand broke due to cable separation. Exhibit D, Edberg Dep., 113.

Plaintiff plans to admit evidence of Mr. Clayton's case through their expert, William Dickinson. Mr. Dickinson has reviewed evidence of Mr. Clayton's accident and can testify to the condition of his stand. As an expert, Mr. Dickinson may rely on evidence that is otherwise inadmissible pursuant to Rule 703. An expert may base his testimony upon type of hearsay he would normally rely upon in course of his work. <u>United States v. Arias</u>, 678 F.2d 1202, 1206 (4th Cir. 1982). Here, Mr. Dickinson would normally rely on the statements of the user of a product that he is examining.

Additionally, Plaintiff may use the photographs of Mr. Clayton's broken stand, which is not hearsay. Plaintiff also plans to use any statements made by Defendants or Defendants' representatives regarding Mr. Clayton's accident, such as Mr. Edberg's testimony. This evidence is not hearsay under Rule 801(d)(2).

**b. Scott Edwards' accident is substantially similar**.

Mr. Edwards was using 2015 Silent Adrenaline treestand at the time of his accident. Exhibit J, Edwards Complaint, 8-9, 20. On October 2, 2018, eleven days before Mr. Walker's accident, the cable of Mr. Clayton's treestand broke. <u>Id</u>. at 11. Photographs of Mr. Edwards' stand show that his cable also broke where the cable meets the stand on the bolted side, just like Mr. Walker's. <u>Compare Id</u>. at 14; <u>with</u> Exhibit I, Photos of Mr. Walker's Treestand. Furthermore, Keith Edberg,

one of Defendants' corporate designees, testified that Mr. Edwards' stand broke due to cable separation. Exhibit D, Edberg Dep., 112.

Like David Clayton, Plaintiff plans to admit evidence of Mr. Edwards' case through their expert witness William Dickinson, who is reviewing his case. Plaintiff plans to use any statements made by Defendants or Defendants' representatives regarding Mr. Edwards' accident, such as Mr. Edberg's testimony and photographs of the stand.

### c.  Daniel Peachey's accident is substantially similar.

Photographs of Mr. Peachey's stand show that his cable also broke where the cable meets the stand on the bolted side, just like Mr. Walker's. Compare Exhibit K, Photos of Peachey's Treestand; with Exhibit I, Photos of Mr. Walker's Treestand. Keith Edberg, one of Defendants' corporate designees, testified that Mr. Peachey's stand broke due to cable separation. Exhibit D, Edberg Dep., 113.

Plaintiff plans to admit evidence of Mr. Peachey's accident through statements made by Defendants or Defendants' representatives regarding Mr. Peachey's accident, such as Mr. Edberg's testimony and photographs of the stand.

### d.  Michael Wood's accident is substantially similar.

Mr. Wood was using a 2018 Silent Adrenaline treestand at the time of his accident. Exhibit L, Wood Correspondence. On October 4, 2020, the cable of Mr. Wood's treestand broke while he was in the process of sitting in the treestand to move the lower section with his feed. Id. Photographs of Mr. Wood's stand show that his cable also broke where the cable meets the stand on the bolted side, just like Mr. Walker's. Compare Exhibit M, Photos of Wood's Treestand, with Exhibit I, Photos of Mr. Walker's Treestand. Keith Edberg, one of Defendants' corporate designees, testified that Mr. Jones' stand broke due to cable separation. Exhibit D, Edberg Dep.,

113. Plaintiff plans to admit evidence of Mr. Wood's accident through statements made by Defendants or Defendants' representatives regarding Mr. Wood's accident.

### e. Jesse Jones' accident was substantially similar.

Mr. Jones was using a 2018 X-scape treestand at the time of his accident. Exhibit N, Jones Investigation at 3. Although not the same model stand, the X-scape has a similar cable structure to the Silent Adrenaline, but a different seat. On October 12, 2020, the cable of Mr. Jones' treestand broke while he was in the process of sitting in the treestand to move the lower section with his feed. Id. at 2. Keith Edberg, one of Defendants' corporate designees, testified that Mr. Jones' stand broke due to cable separation. Exhibit D, Edberg Dep., 113.

Plaintiff plans to admit evidence of Mr. Jones' accident through statements made by Defendants or Defendants' representatives regarding Mr. Jones' accident. Notably, Defendants drafted investigation report in response to Mr. Jones filing a consumer complaint with them. See Exhibit N, Jones Investigation. This is not only a statement made by a party opponent under Rule 801(d)(2), it is also a business record that would have been kept in the course of a regularly conducted activity and is an exception to hearsay under Rule 803(6).

### III.    Evidence of the substantially similar accidents are relevant to this case.

Sustainably similar accidents are relevant under Rule 401 and their probative value substantially outweighs any prejudicial effects. Because evidence of prior accidents can be prejudicial, courts must perform an analysis to determine if the other accidents are substantially similar. Stutts v. Flour Daniel, Inc., 1997 U.S. App. LEXIS 25746, *12 (4th Cir. Sept. 22, 1997) (citing Buckman v. Bombardier Corp., 893 F. Supp. 547, 552 (E.D.N.C. 1995)); see also Renfro Hosiery Mills Co. v. National Cash Register Co., 552 F.2d 1061, 1068-69 (4th Cir. 1977). There the Fourth Circuit said:

> If the events are sufficiently similar in time, place, or circumstances, however, such evidence is relevant and admissible to show causation. . . . [W]ith regard to the problem of similar accidents or product failures, few things could be more relevant in a products action than the occurrence or the non-occurrence of other accidents or failures under similar circumstances. Clearly, evidence of the existence or non-existence of such failures would tend to make the presence of a design defect more or less probable than it would be without the evidence. This is all that is required by Rule 401. Those courts which have passed on the issue have uniformly admitted such evidence where there was a sufficient similarity of conditions and the evidence was not so technical as to cause undue confusion or waste of time.

<u>Stutts</u>, 1997 U.S. App. LEXIS at *12-13. Therefore, if this court determines that the other accidents are substantially similar, there is no longer a question of prejudice under Rule 403.

These accidents show a clear pattern of cable assembly failure, consistent with Mr. Walker's accident. Each stand fell because the cable on the upper section broke, at or near the bolt connecting the cable to the stand, just as Mr. Walker's cable broke. Furthermore, several of the accidents occurred when the user was applying pressure to the upper section by sitting down, similar to how Plaintiff believes Mr. Walker's accident occurred, by putting pressure on the upper stand to support himself standing up. Additionally, these incidents help disprove Defendants' theory that Mr. Walker created a dynamic overload on the stand. None of the users reported falling into the stand at the time of break. In fact, Mr. Clayton, Mr. Wood, and Mr. Jones both state they were sitting down at the time of the accident.

Because these incidents are substantially similar to Mr. Walker's accidents, they are relevant under Rule 401 and do not create any unfair prejudice under Rule 403. Therefore, evidence of these similar accident should be admissible at trial.

**IV.** **<u>Plaintiff should be permitted to introduce evidence of other accidents for impeachment or cross-examination purposes.</u>**

Finally, if Defendants open the door to the other incidents, (i.e. failure of the cable system due to corrosion) either through their experts or through other evidence adduced at trial, Plaintiff should be able to cross-examine witnesses on the subject of the other accidents.  Landis v. Jarden Corp., 5 F. Supp 3d 808, 817 (N.D. W. Va. 2014).

## V.    **Conclusion**

For all the reasons given herein, Plaintiff respectfully requests that this Court overrule the Defendants' Motion in Limine to Exclude References to Other Incidents, and for all other relief this Court deems fair.

RICHARD WALKER

By Counsel

_/s/ William B. Kilduff_____
William B. Kilduff, Esquire
VSB # 16665
Christopher L. Spinelli, Esquire
VSB # 51332
EMROCH & KILDUFF, LLP
3600 West Broad Street, Suite 700
P. O. Box 6856
Richmond, VA 23230-0856
(804) 358-1568
(804) 353-5817 (fax)
wkilduff@emrochandkilduff.com
cspinelli@emrochandkilduff.com
*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

  I certify that on October 20, 2021, the undersigned served a true and correct copy of the foregoing by email and regular mail to the following counsel of record:

       Barry B. Sutton, *Admitted Pro Hac Vice*
       Steven D. Brock, *Admitted Pro Hac Vice*
       151 South Old Woodward Ave., Ste. 200
       Birmingham, MI 48009
       Phone: (313) 965-8577 – Sutton
       Phone: (248) 988-1811 -- Brock
       bsutton@clarkhill.com
       sbrock@clarkhill.com

       FRITH ANDERSON + PEAKE, P.C.
       Sean C. Workowski (USB No. 36120)
       Nathan H. Schnetzler (USB No. 86437)
       29 Franklin Road, SW
       Roanoke, Virginia 24006-1240
       Telephone: (540) 772-4600
       Facsimile: (540) 772-9167
       sworkowski@faplawfirm.com
       nschnetzler@faplawfirm.com

       *Counsel for Defendants*

        /s/ William B. Kilduff_____
       William B. Kilduff, Esquire
       VSB # 16665
       Christopher L. Spinelli, Esquire
       VSB # 51332
       EMROCH & KILDUFF, LLP
       3600 West Broad Street, Suite 700
       P. O. Box 6856
       Richmond, VA 23230-0856
       (804) 358-1568
       (804) 353-5817 (fax)
       wkilduff@emrochandkilduff.com
       cspinelli@emrochandkilduff.com
       *Counsel for Plaintiff*